**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **7-ELEVEN, INC.,** | |
| Plaintiff, | |
| v. | Civil Action No. 1:18-cv-5269 |
| **SHAKTI CHICAGO, INC., SHAKTI BCP 1, INC., SMITA 7, INC., SHAKTI 7, INC., SHAKTI 2 ENTERPRISES, INC., SMITA II INC., SHAKTI 1 ENTERPRISES, INC., SMITA 1 ENTERPRISES, INC.,** and **KETAN PATEL**, | |
| Defendants. | |

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff 7-Eleven, Inc. ("7-Eleven"), by and through its attorneys, for its Complaint for Injunctive and Other Relief ("Complaint") against Defendants Shakti Chicago, Inc., Shakti BCP 1, Inc., Smita 7, Inc., Shakti 7, Inc., Shakti 2 Enterprises, Inc., Smita II Inc., Shakti 1 Enterprises, Inc., Smita 1 Enterprises, Inc., and Ketan Patel (collectively, "Defendants"), alleges as follows:

### Introduction

1.      This action arises out of Defendants' pervasive and systematic failures to pay their employees the wages to which they are entitled, their ongoing failure to satisfy their tax obligations, their repeated breaches of the franchise agreements they entered into with 7-Eleven, and the potential their conduct has to harm 7-Eleven's goodwill and image.  As set forth more fully below, 7-Eleven has learned that, in violation of their obligations under both applicable law and the parties' franchise agreements, Defendants have repeatedly failed to pay their employees the regular and overtime wages they are due.  Many of Defendants' employees have not even

appeared on Defendants' payroll registers. This includes one employee who worked over 80 hours in a single week, but was apparently paid nothing for his services.

2.     But Defendants did not just underpay their own employees; they understated their tax obligations to the federal government and the Illinois Department of Employment Security. In fact, in one week alone, Defendants' payroll register listed that their non-salaried employees worked approximately 1605 hours, when in fact those employees worked nearly 2200 hours.

3.     For these and the additional reasons set forth below, including their repeated breaches of their contractual obligations, 7-Eleven terminated each Defendant's franchise agreement. However, Defendants refuse to comply with their post-termination obligations under those agreements, including their obligations to (i) cease all use of 7-Eleven's trademarks, and (ii) turn possession of the premises of their former franchises (which, with one exception, are leased to them by 7-Eleven) over to 7-Eleven.

4.     By this action, 7-Eleven seeks, among other things, possession of the premises of Defendants' former franchised 7-Eleven stores, a preliminary and permanent injunction enjoining Defendants' wrongful and unlawful use of 7-Eleven's federally registered trademarks, damages for Defendants' infringing and other wrongful conduct, and the attorneys' fees and costs it has incurred and will incur in prosecuting this action.

## Jurisdiction, Venue and Parties

5.     This Court has original subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338 and 1367, in that this is a civil action involving claims arising under the laws of the United States, including an Act of Congress relating to trademarks, and wherein all other claims are so related to claims within the Court's original jurisdiction that they form part of the same case or controversy.

6. This Court also has original subject matter jurisdiction over this action under 28 U.S.C. § 1332, in that it is a civil action wherein the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

7. Plaintiff 7-Eleven is a Texas corporation with its principal place of business in Irving, Texas.

8. Defendant Shakti Chicago, Inc. ("Shakti Chicago") is an Illinois corporation with its principal place of business in Illinois. Shakti Chicago is the former franchisee of a 7-Eleven store located in La Grange, Illinois.

9. Defendant Shakti 2 Enterprises, Inc. ("Shakti 2") is an Illinois corporation with its principal place of business in Illinois. Shakti 2 is the former franchisee of a 7-Eleven store located in Addison, Illinois.

10. Defendant Smita II, Inc. ("Smita II") is an Illinois corporation with its principal place of business in Illinois. Smita II is the former franchisee of a 7-Eleven store located in Itasca, Illinois.

11. Defendant Smita 1 Enterprises, Inc. ("Smita 1") is an Illinois corporation with its principal place of business in Illinois. Smita 1 is the former franchisee of a 7-Eleven store located in Schaumburg, Illinois.

12. Defendant Shakti 1 Enterprises, Inc. ("Shakti 1") is an Illinois corporation with its principal place of business in Illinois. Shakti 1 is the former franchisee of a 7-Eleven store located in Bolingbrook, Illinois.

13. Defendant Shakti 7, Inc. ("Shakti 7") is an Illinois corporation with its principal place of business in Illinois. Shakti 7 is the former franchisee of a 7-Eleven store located in Lake Forest, Illinois.

14.    Defendant Smita 7, Inc. ("Smita 7") is an Illinois corporation with its principal place of business in Illinois.  Smita 7 is the former franchisee of a 7-Eleven store located in Lake Forest, Illinois.

15.    Defendant Shakti BCP 1, Inc. ("Shakti BCP") is an Illinois corporation with its principal place of business in Illinois.  Shakti BCP is the former franchisee of a 7-Eleven store located in Niles, Illinois.

16.    On information and belief, Defendant Ketan Patel ("Patel") is the President and controlling shareholder of Shakti Chicago, Shakti 2, Smita II, Smita 1, Shakti 1, Shakti 7, Smita 7 and Shakti BCP.  Patel is a resident and citizen of the State of Illinois.

17.    Venue is proper in this judicial district because all Defendants reside in this judicial district and because a substantial part of the events giving rise to 7-Eleven's claims occurred in this judicial district.

**7-Eleven's Registered Trademarks, Service Marks and Franchise System**

18.    7-Eleven is one of the largest, best-known, and most successful franchise systems in the world.  It has been selling franchises in the United States for more than fifty years.  Currently, there are more than 7,900 7-Eleven stores operating in the United States, approximately 320 of which are franchised to independent business owners in this State.

19.    Based on years of experience, 7-Eleven has developed, and is the sole and exclusive owner of, uniform methods relating to the establishment and operation of 7-Eleven convenience stores (the "7-Eleven System").

20.    The 7-Eleven System is designed to ensure that 7-Eleven convenience stores and the services and products offered therein meet uniform, high quality standards.  The 7-Eleven System is also designed to protect 7-Eleven's name and reputation.  As such, all 7-Eleven

4

franchise agreements require that franchisees comply with the 7-Eleven System in the operation of their 7-Eleven convenience stores.

21.     The 7-Eleven System is widely known and favorably recognized by consumers. Consumers choose 7-Eleven because of 7-Eleven's high reputation for, *inter alia*, quality and service. The 7-Eleven System is founded upon adherence to 7-Eleven's standards and specifications.

22.     To identify the source, origin and sponsorship of 7-Eleven convenience stores and the services they offer, and to distinguish those stores and the products and services provided therein from those established, made, offered and sold by others, 7-Eleven has extensively used certain trademarks, service marks, trade names, logos, emblems and indicia of origin, including, but not limited to the following names and marks (the "7-Eleven Marks"):

| Mark | Registration Number | Effective Date |
|------|---------------------|----------------|
| 7-ELEVEN | 718,016 | 7/4/1961 |
| 7-ELEVEN | 920,897 | 9/21/1971 |
| OH THANK HEAVEN FOR 7-ELEVEN | 1,008,307 | 1/17/1978 |
| SLURPEE | 829,177 | 7/8/1967 |
| BIG GULP | 1,110,172 | 12/26/1978 |
| 7-ELEVEN LOGO AND DESIGN | 896,654 | 8/11/1970 |

23.     The 7-Eleven Marks are registered on the Principal Register of the United States Patent and Trademark Office. These registrations continue in full force and effect and all those eligible are incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065.

24.     7-Eleven has given notice to the public of the registration of the 7-Eleven Marks as provided in 15 U.S.C. § 1111 and complies with all legal requirements to ensure that 7-Eleven and its authorized licensees remain the exclusive users of the 7-Eleven Marks.

25.     7-Eleven has continuously used the 7-Eleven Marks in interstate commerce in connection with the promotion and licensing of 7-Eleven convenience stores and the services they offer throughout the United States, including the State of Illinois, since the date of their registration.

26.     7-Eleven and its authorized franchisees use the 7-Eleven Marks as the marks and trade identity by which the products and services offered by 7-Eleven and its franchisees are distinguished from other convenience store businesses and the products and services offered by them.

27.     7-Eleven and its authorized franchisees have extensively advertised and promoted 7-Eleven convenience stores and the products and services they offer under the 7-Eleven Marks throughout the United States and through various media.  As a result of such efforts and the considerable money spent in connection therewith, the products and services offered by 7-Eleven and its licensees under the 7-Eleven Marks have met with widespread public approval and have established demand and goodwill among consumers throughout the United States, including the State of Illinois.

28.     The 7-Eleven Marks are distinctive and famous and have acquired secondary meaning.

29.     The 7-Eleven Marks are among the best and most widely known trademarks in the United States, and are assets of inestimable value to 7-Eleven, representing and embodying 7-Eleven's considerable goodwill and favorable reputation among consumers.

## The Parties' Written Franchise Agreements

30.     7-Eleven enters into Individual Store Franchise Agreements with entities who are granted the right to operate 7-Eleven franchises using the 7-Eleven System and the 7-Eleven Marks, all as fully set forth in the Franchise Agreements.

31.     On or about March 15, 2004, Smita Corporation and 7-Eleven entered into a 7-Eleven, Inc. – Individual Store Franchise Agreement (the "Addison Franchise Agreement") pursuant to which 7-Eleven granted Smita Corporation a franchise to operate a 7-Eleven store (Store No. 33147) located at 800 West Fullerton Street in Addison, Illinois (the "Addison Store").

32.     On or about February 12, 2012, Smita Corporation and 7-Eleven entered into an Amendment to Store Franchise Agreement – Corporate Name Change under which the parties agreed to amend the Addison Franchise Agreement to change the name of the franchisee thereunder from Smita Corporation to Shakti 2.

33.     On or about August 16, 2005, Patel and 7-Eleven entered into a 7-Eleven, Inc. – Individual Store Franchise Agreement (the "Schaumburg Franchise Agreement") pursuant to which 7-Eleven granted Patel a franchise to operate a 7-Eleven store (Store No. 33527) located at 1530 North Roselle Road in Schaumburg, Illinois (the "Schaumburg Store").

34.     Also on or about August 16, 2005, Patel and 7-Eleven entered into an Entity Franchisee Amendment to Franchise Agreement by which Patel assigned all of his rights, duties and obligations under the Schaumburg Franchise Agreement to Smita 1.

35.     On or about October 27, 2009, Shakti 1 and 7-Eleven entered into a 7-Eleven, Inc. – Individual Store Franchise Agreement (the "Bolingbrook Franchise Agreement") pursuant to

which 7-Eleven granted Shakti 1 a franchise to operate a 7-Eleven store (Store No. 34122) located at 1091 S. Weber Road in Bolingbrook, Illinois (the "Bolingbrook Store").

36.     On or about May 1, 2012, Smita II and 7-Eleven entered into a 7-Eleven, Inc. – Individual Store Franchise Agreement (the "Itasca Franchise Agreement") pursuant to which 7-Eleven granted Smita II a franchise to operate a 7-Eleven store (Store No. 33346) located at 950 North Rohlwing Road in Itasca, Illinois (the "Itasca Store").

37.     On or about July 25, 2011, Smita 7 and 7-Eleven entered into a 7-Eleven, Inc. – Individual Store Franchise Agreement (the "Lake Forest East Franchise Agreement") pursuant to which 7-Eleven granted Smita 7 a franchise to operate a 7-Eleven store (Store No. 34716) located at 26850 East Oasis Service Road in Lake Forest, Illinois (the "Lake Forest East Store").

38.     On or about July 25, 2011, Shakti 7 and 7-Eleven entered into a 7-Eleven, Inc. – Individual Store Franchise Agreement (the "Lake Forest West Franchise Agreement") pursuant to which 7-Eleven granted Shakti 7 a franchise to operate a 7-Eleven store (Store No. 34717) located at 13845 West Oasis Service Road in Lake Forest, Illinois (the "Lake Forest West Store").

39.     On or about April 7, 2015, Shakti Chicago and 7-Eleven entered into a 7-Eleven, Inc. – Individual Store Franchise Agreement (the "La Grange Franchise Agreement") pursuant to which 7-Eleven granted Shakti Chicago a franchise to operate a 7-Eleven store (Store No. 13324) located at 6 East 47th Street in La Grange, Illinois (the "La Grange Store").

40.     On or about December 27, 2016, Shakti BCP and 7-Eleven entered into a 7-Eleven, Inc. Business Conversion Franchise Agreement (the "Niles BCP Franchise Agreement") pursuant to which 7-Eleven granted Shakti BCP a franchise to operate a 7-Eleven store (Store No. 39805) located at 8575 W. Dempster in Niles, Illinois (the "Niles Store").

41.    The franchise agreements referenced in Paragraphs 30-40 are referred to collectively as the "Franchise Agreements," and the 7-Eleven stores referenced in those paragraphs are referred to collectively as the "Stores."  As it concerns the facts giving rise to this proceeding, the terms of all of the Franchise Agreements other than the Niles BCP Franchise Agreement are either identical or substantively identical.  Copies of the La Grange Franchise Agreement and the Niles BCP Franchise Agreement are annexed hereto as Exhibits A and B, respectively.

### Defendants' Obligations

42.    Under Paragraph 8 of the Franchise Agreements, Defendants agreed to comply with all local, state and federal laws, statutes, regulations, ordinances and rules with respect to the operation of the Stores.

43.    This obligation required, among other things, that Defendants comply with all applicable wage and hours laws in operating their Stores.  In this regard, each Defendant agreed, in Paragraph 2 of the Franchise Agreements, to "exercise complete control over and responsibility for all labor relations" in the Stores, and acknowledged that 7-Eleven did not exercise any discretion or control over their employment policies or employment decisions.

44.    Defendants further agreed, under Paragraph 22 of the Niles BCP Franchise Agreement and Paragraph 21 of the other Franchise Agreements, that they would be solely responsible for, and had to pay, among others, all payroll taxes related to the Store.

45.    In addition, under Paragraph 13(c) of the Niles BCP Franchise Agreement and Paragraph 12(c) of the other Franchise Agreements, Defendants agreed to provide truthful and accurate time and wage authorizations for their employees.    Defendants specifically

acknowledged that 7-Eleven was relying on the accuracy of all of the information they provided, including all payroll information.

46.     Finally, under Paragraph 20(a) of the Niles BCP Franchise Agreement and Paragraph 19(a) of the other Franchise Agreements, Defendants covenanted to maintain a high ethical standard in the conduct of the franchised businesses and in the operation of the Stores. They agreed, under Paragraph 27(a)(2) of the Niles BCP Franchise Agreement and Paragraph 26(a)(2) of the other Franchise Agreements, that it was a material breach, and grounds for termination of the Franchise Agreements, if they jeopardized a Store, 7-Eleven's trademarks or service marks or the goodwill associated with them, or 7-Eleven's image.

47.     Defendants also agreed that the Franchise Agreements could be terminated, immediately and without an opportunity to cure, if after receiving three (3) separate notices of material breach, a fourth breach occured and a fourth breach notice was delivered within two (2) years of delivery of the first breach notice, regardless of whether any of those prior breaches had been cured after notice.

### Defendants' Pervasive Violations of the Wage and Hours and Tax Laws and Breaches of the Franchise Agreements

48.     In light of the incalculable harm franchisees' failures to comply with wage and hour and immigration laws can have on the goodwill associated with the 7-Eleven® Marks and 7-Eleven's image, 7-Eleven has undertaken efforts to promote compliance with these laws throughout the franchise system.

49.     Among other things, in December 2015 and February 2017, 7-Eleven sent notices to all franchisees, including Defendants, reminding them of the importance of complying with their legal obligations under the wage and hour laws.

50.     7-Eleven also funded (through a franchisee association called the National Coalition of Associations of 7-Eleven Franchisees) educational seminars on the obligations imposed by the labor and employment and immigration laws.

51.     Despite these and other efforts, Defendants have failed to pay their employees the compensation to which they are entitled.

52.     In fact, based on a review of Defendants' Stores' operations during the week of March 30, 2018 through April 5, 2018, 7-Eleven learned that Defendants have repeatedly and systematically underpaid their employees.  For example:

    a.     At the Niles Store:  Mahesh Kumar Pansuria worked over 81 hours but is not even listed on the Store's payroll register; Dawood Khan worked 66.59 hours, but was only compensated for 56.11 hours of work.

    b.     At the Addison Store:  Dipakkunar Patel spent over 58 hours working, but was only compensated for 11.33 hours of overtime; Pankajbhai Patel worked over 72 hours, but was only paid for 40 hours of work; and Krunal Amin worked nearly 88 hours, but was only compensated for 29.33 overtime hours (not the almost 48 overtime hours he actually worked).

    c.     At the La Grange Store:  Hanif Muhammad spent approximately 86 hours working, but does not even appear on the Store's payroll register; Jacqueline Reasnover worked for almost 24.5 hours, but was only paid for 8.33 hours of work; Jauhar Ali worked 66 hours and 22 minutes, yet only received overtime wages for 20.09 hours; Bhumi Patel spent 3.62 hours working in the Store but, like Mr. Muhammad, is not listed on the Store's payroll register.

    d.     At the Schaumburg Store:  Two employees (Miteshkuma Patel and Hemantkuma Patel) worked 65.89 and 60.17 hours, respectively. However, the payroll register for that Store shows that Defendant Smita 1 only paid Mr. Patel for 57.33 hours of work and only paid Hemantkuma Patel, who was entitled to receive over 20 hours in overtime compensation, overtime wages for 13.93 hours.

    e.     At the Lake Forest East Store:  Tushar Patel spent 70.38 hours working, but was only compensated for 61.26 hours of work; Hardik Patel worked 12.47 hours, but was not even listed on the Store's payroll register; and Hirenkumar Patel worked 66.62 hours, but was only paid for 16.38 hours of overtime.

    f.     At the Itasca Store:  Nimeshkumar Patel spent 14.37 hours working, but is not listed on the Store's payroll register; Pawan Shah worked over 64 hours, but was only paid for 51.33 hours of work; and Abdul Khan, who worked 65.75 hours, was only compensated for 57.33 hours of work.

g.    At the Lake Forest West Store:  At least five employees (Saket Patel, Nimeshkuma Patel, Tushar Patel, Hirenkumar Patel and Syed Gaillani) worked in the Store but are not even listed on the Store's payroll register; two (Kamesh Sheth and Hardik Patel) were compensated for less hours than they actually worked; and two others (Jose Tovar and Marco Perez-Blanco) did not receive the overtime wages to which they were entitled.

h.    At the Bolingbrook Store:  Vishal Patel worked 30.72 hours, but is not even listed on the Store's payroll register; Muhammad Ayub worked 77.85 hours, but was only paid for 26 hours of overtime; and Hermant Pandya worked in the Store for 81 hours, but is not listed on the Store's payroll register.

53.    As employers in the State of Illinois, Defendants are obligated to submit quarterly payments to the Illinois Department of Revenue and the Illinois Department of Employment Security.

54.    Defendants failed to pay all of their employees all of the wages to which they were entitled.

55.    Defendants failed to account for all of the employees who actually performed services in their Stores.

56.    For example, in addition to failing to pay their employees the wages to which they were entitled, 7-Eleven learned that, during the week of March 30, 2018 through April 5, 2018:

a.    At the Lake Forest West Store:  At least eight employees were not even listed on the Store's payroll register.  While the Store's payroll records show that employees spent 223.30 hours working, they actually worked over 315 hours.

b.    At the Lake Forest East Store:  At least four employees were not even listed on the Store's payroll register.  While payroll records show that the employees spent 249.92 hours working, they actually worked approximately 367 hours.

c.    At the La Grange Store:  At least four employees were working who were not even listed on the Store's payroll.  While Shakti Chicago's payroll records show that its employees spent 146.89 hours working in the Store, they actually worked more than 238 hours.

d.    At the Schaumburg Store:  At least three employees who worked in the Store were not listed on the Store's payroll register.  While the Store's payroll records show that employees spent about 166 hours working, they actually worked approximately 248 hours.

e.  At the Bolingbrook Store:  At least three of the Store's employees were not even listed on the Store's payroll register.  While the Store's payroll records show that employees spent about 111 hours working, they actually worked approximately 240.8 hours.

f.  At the Niles Store:  At least three of the people listed on the payroll register never actually entered the Store.  While the Store's payroll records show that employees spent 194.98 hours working, they actually worked over 217 hours.

g.  At the Addison Store:  At least two employees who worked in the Store were not listed on the Store's payroll.  While the Store's payroll records show that employees spent about 260 hours working, they actually worked more than 288 hours.

h.  At the Itasca Store:  At least two of the Store's employees were not even listed on the Store's payroll.  While payroll records show that the Store's employees spent 252.80 hours working, they actually worked more than 271 hours.

57.  In light of the foregoing, Defendants' tax payments were inaccurate and did not comply with the law.

58.  For the foregoing reasons, the payroll records and data that each Defendant submitted to 7-Eleven for processing were inaccurate and incomplete.  As noted above, that constitutes a breach of Paragraph 13(c) of the Niles BCP Franchise Agreement and Paragraph 12(c) of the other Franchise Agreements.

59.  Further, in 2018, at least four of Defendants' former 7-Eleven Stores were raided by agents of U.S. Immigrations and Customs Enforcement ("ICE").

60.  On information and belief, some or all of Defendants received audit notifications from ICE.

61.  On information and belief, ICE arrested some of Defendants' employees.

62.  On information and belief, Defendants failed to take reasonable steps to determine whether their employees were legally in the United States and authorized to work.

63.  Defendants' conduct threatens, jeopardizes and imperils the goodwill associated with the 7-Eleven Marks.

**7-Eleven's Notices Of Material Breach and**
**7-Eleven's Termination of the Franchise Agreements**

64.     On July 27, 2018, 7-Eleven delivered to each Defendant four (4) separate notices of material breach based on their repeated failures to comply with the applicable wage and hour laws, submit accurate payroll information to 7-Eleven, and operate their stores in an ethical manner and in a way that did not jeopardize the Stores or 7-Eleven's goodwill, image and marks.

65.     The violations that led to the issuance of these notices were not isolated. A subsequent review of Defendants' operations established that, in the week of April 6, 2018 to April 12, 2018:

a.     At the Lake Forest West Store: At least seven employees were not even listed on the Store's payroll register; some (including Kamesh Sheth and John Borowiec) were not paid the wages to which they were entitled; and several others (including one who worked over 32 hours and another who worked over 20 hours) are not listed as having been paid anything.

b.     At the Lake Forest East Store: At least six employees were not even listed on the Store's payroll register; some (including Tushar Patel and Marco Perez-Blanco) were not paid the wages to which they were entitled; and several others (including one who worked over 34 hours) are not listed as having been paid anything.

c.     At the La Grange Store: At least two employees were working who were not even listed on the Store's payroll; some employees were undercompensated; and one employee who worked over 74 hours (Hanif Muhammad) is not listed as having been paid anything.

d.     At the Schaumburg Store: At least three employees who worked in the Store were not listed on the Store's payroll register; some (including Hemantkuma Patel and Krunal Amin) were not paid the wages to which they were entitled; and at least four (including one who worked over 22 hours) are not listed as having been paid anything.

e.     At the Bolingbrook Store: At least three of the Store's employees were not even listed on the Store's payroll register; four employees – including one (Hemant Pandya) who worked over 71 hours – were not listed as being paid anything; and at least two (Muhammad Ayub and Bhumi Patel) were not paid the wages to which they were entitled.

f.     At the Niles Store: One employee worked over 33 hours but apparently received no compensation.

g.     At the Addison Store: One employee (who worked over 87 hours) is not listed on the Store's payroll as having been paid anything; one employee

who worked over 75 hours was not paid any overtime; and a third (Dipakkumar Patel) was not paid the wages to which he was entitled.

h.     At the Itasca Store:  At least six employees were not listed on the Store's payroll, and at least seven employees (including one who worked over 55 hours) are not shown on the Store's payroll as having been paid anything.

66.     On August 1, 2018, 7-Eleven delivered to each Defendant a fifth notice of material breach based on each Defendant's breach of its obligation to pay all payroll taxes related to the Store.

67.     The August 1, 2018 Notices constituted  grounds for the immediate termination of the Franchise Agreements.  The Notices advised Defendants that the Franchise Agreements were terminated, effective immediately, and that they were required to comply with their post-termination obligations under the Franchise Agreements.  True and correct copies of the Notices of Termination are annexed hereto collectively as Exhibit C.

68.     Under Paragraph 29 of the Niles Franchise Agreement and Paragraph 28 of all other Franchise Agreements, Defendants were required, effective upon the termination of the Franchise Agreements, to immediately cease using the 7-Eleven Marks and the 7-Eleven System.

69.     In addition, with the exception of the Niles Store, 7-Eleven leases all of the Stores to Defendants.  Accordingly, under Paragraph 28 of all of the Franchise Agreements other than the Niles Franchise Agreement, Defendants agreed that, upon expiration or termination, they would immediately and without further notice peaceably surrender and turn over to 7-Eleven possession of the Stores.

**Defendants' Refusal To Comply With Their Post-Termination Obligations**

70.     Defendants have disputed the propriety of the terminations.  In that regard, notwithstanding the termination of the Franchise Agreements, Defendants continue to use the 7-Eleven Marks and the 7-Eleven System in connection with the operation of their formerly

franchised Stores, continue to market and promote the Stores through the use of the 7-Eleven Marks, continue to hold the Stores out to the public as authorized 7-Eleven Stores, and continue to pass-off the Stores and the products offered by them as being authorized by 7-Eleven when they are not.

71. Defendants' use of the 7-Eleven Marks is without the license or consent of 7-Eleven and has caused and is likely to cause mistake, confusion or deception in the minds of the public as to source, affiliation and sponsorship of the Stores.

72. In addition to the fact that both 7-Eleven and Defendants offer the identical products at their Stores, the products provided by Defendants using the 7-Eleven Marks are offered to the same class of consumers as those who patronize authorized 7-Eleven stores. Upon seeing the familiar 7-Eleven Marks through Defendants' unauthorized use thereof, consumers will be deceived into concluding that Defendants' Stores, and the products and services offered and sold therein, are subject to 7-Eleven's supervision, are sponsored or endorsed by 7-Eleven and bear the 7-Eleven Marks pursuant to 7-Eleven's authority and permission.

73. So long as Defendants continue to use the 7-Eleven Marks in connection with the operation of their former 7-Eleven Stores, consumers have no practical way of knowing that Defendants' Stores are no longer affiliated with, or sponsored, authorized or endorsed by, 7-Eleven. As a result, any consumer dissatisfaction with Defendants' Stores, or with the products and services offered in connection therewith, will be attributed to 7-Eleven and the entire 7-Eleven franchise network.

74. Defendants have received actual notice of their violation and infringement of the 7-Eleven Marks and have constructive notice of 7-Eleven's rights in the Marks and the

registrations thereof pursuant to 15 U.S.C. § 1072. Defendants' continued infringement is willful, malicious, fraudulent and deliberate, and is irreparably harming 7-Eleven.

76. In addition to refusing to cease use of the 7-Eleven Marks and System, Defendants have failed and refused to surrender possession of the Stores, the equipment in the Stores, and the Stores' inventory to 7-Eleven.

76. 7-Eleven, as lawful owner of the leasehold interests in the real property and owner of the fixtures and equipment in all of Defendants' formerly franchised Stores other than the Niles Store, has the legal right to make productive use of its assets and properties.

77. Defendants are holding over in breach of the Franchise Agreements and without legal authority. Defendants' refusal to surrender possession of those properties and assets that belong to 7-Eleven is interfering with and abrogating 7-Eleven's real property rights, and this interference is causing 7-Eleven irreparable harm.

78. 7-Eleven has at all times complied with and fully performed all of its obligations under its agreements with Defendants.

## COUNT I

### Forcible Entry and Detainer
### (against all Defendants other than Shakti BCP)

79. 7-Eleven repeats and realleges ¶¶ 1 through 78 of its Complaint as and for this paragraph 79, as if fully set forth herein.

80. The Franchise Agreements were terminated effective August 1, 2018.

81. Upon termination of the Franchise Agreements, Defendants were obligated to surrender to 7-Eleven the premises for each Store other than the Niles Store and related facilities, equipment, and inventory.

82.     7-Eleven is entitled to possession of the premises of the La Grange Store, the Addison Store, the Itasca Store, the Schaumburg Store, the Bolingbrook Store, the Lake Forest East Store, and the Lake Forest West Store.  Defendants are unlawfully withholding possession of those Stores from 7-Eleven.

83.     As a result of Defendants' actions, 7-Eleven has suffered and will continue to suffer irreparable injury, including, but not limited to, the inability to exploit, use, and enjoy its real property.

84.     7-Eleven will be irreparably injured if Defendants are permitted to retain possession of the Stores and 7-Eleven has no adequate remedy at law for that injury.

## COUNT II

### Recovery Of Chattels Subject To Security Interest
### (against all Defendants other than Shakti BCP)

85.     7-Eleven repeats and realleges ¶¶ 1 through 78 of its Complaint as and for this paragraph 85, as if fully set forth herein.

86.     7-Eleven holds perfected security interests in the inventory and proceeds of all Stores other than the Niles Store.

87.     The security agreements for the Stores provide that, upon termination of the Franchise Agreements, Defendants must return the Stores' inventory to 7-Eleven.

88.     Defendants have unjustly retained all inventory and proceeds of the Stores.

89.     As a direct result of Defendants' actions as set forth above, 7-Eleven's security interests have been harmed.

90.     7-Eleven will be irreparably injured if Defendants are permitted to retain possession of the inventory, proceeds and other property subject to its security interests, and it has no adequate remedy at law for such injury.

18

## COUNT III

### Breach Of Contract – Post-Termination Obligations
### (against all Defendants)

91.     7-Eleven repeats and realleges ¶¶ 1 through 78 of its Complaint as and for this paragraph 91, as if fully set forth herein.

92.     Upon termination of all Franchise Agreements other than the Niles BCP Franchise Agreement, Defendants were obligated, among other things, to: (i) surrender the Stores' premises to 7-Eleven; (ii) surrender all 7-Eleven equipment; (iii) immediately cease using the 7-Eleven Marks and all elements of the 7-Eleven System; (iv) transfer to 7-Eleven the Receipts, Cash Register Fund, prepaid Operating Expenses, money order blanks, bank drafts, lottery tickets and store supplies to 7-Eleven; and (v) return all Trade Secrets and Confidential Information to 7-Eleven.

93.     Defendants have failed and refused to comply with their post-termination obligations, materially breaching the Franchise Agreements.

94.     Furthermore, upon termination or expiration of the Niles BCP Franchise Agreement, Defendant Shakti BCP was required to, among other things; (i) immediately cease using the 7-Eleven Marks and the 7-Eleven System; (ii) make alterations to the trade dress of the Store to distinguish it from other 7-Eleven Stores; and (iii) remove all 7-Eleven signage.

95.     As a direct and proximate result of Defendants' breaches of their post-termination obligations, 7-Eleven has been irreparably injured, including injury to its goodwill and reputation, as well as being deprived of its ability to utilize its property, resulting in lost revenues and profits and diminished goodwill, in an amount to be determined at trial.

## COUNT IV

### Breach Of Contract – Liquidated Damages
**(against Shakti BCP)**

96.     7-Eleven repeats and realleges ¶¶ 1 through 78 of its Complaint as and for this paragraph 96, as if fully set forth herein.

97.     Shakti BCP acknowledged, under Paragraph 29 of the Niles BCP Franchise Agreement, that if 7-Eleven terminated that Agreement, it would be difficult if not impossible to accurately ascertain the damages 7-Eleven would incur.

98.     The parties agreed that, if Shakti BCP operated the Niles Store for 23 months or less, the amount of damages that would be a reasonable estimate of 7-Eleven's losses would be $200,000.  The parties further agreed that this amount was not a penalty.

99.     Shakti BCP operated the Niles Store for less than 23 months.

100.     Shakti BCP has not paid 7-Eleven the damages due under the Niles Franchise Agreement.

## COUNT V

### Lanham Act - Trademark Infringement
**(against all Defendants)**

101.     7-Eleven repeats and realleges ¶¶ 1 through 78 of its Complaint as and for this paragraph 101, as if fully set forth herein.

102.     Defendants' acts, practices and conduct constitute an infringing use in interstate commerce of a reproduction, counterfeit, copy, or colorable imitation of the 7-Eleven Marks, and Defendants' sale, offering for sale, distribution or advertising of goods and services under the 7-Eleven Marks, or any designs similar thereto, is likely to cause confusion or mistake or to deceive the public in violation of 15 U.S.C. § 1114(l).

103.     As a direct and proximate result of Defendants' infringement, 7-Eleven has been and is likely to be substantially injured in its business, including its goodwill and reputation, resulting in lost revenues and profits and diminished goodwill.

104.     7-Eleven has no adequate remedy at law because the 7-Eleven Marks are unique and represent to the public 7-Eleven's identity, reputation and goodwill, such that damages alone cannot fully compensate 7-Eleven for Defendants' misconduct.

105.     Unless enjoined by the Court, Defendants will continue to use and infringe the 7-Eleven Marks, to 7-Eleven's irreparable injury.  This threat of future injury to 7-Eleven's business identity, goodwill and reputation requires injunctive relief to prevent Defendants' continued use of the 7-Eleven Marks and to ameliorate and mitigate 7-Eleven's injuries.

## COUNT VI

### Lanham Act – Trademark Dilution
**(Against all Defendants)**

106.     7-Eleven repeats and realleges ¶¶ 1 through 78 of its Complaint as and for this paragraph 106, as if fully set forth herein.

107.     Defendants' acts, practices, and conduct constitute an infringing use in interstate commerce of a reproduction, counterfeit, copy, or colorable imitation of the 7-Eleven Marks, and Defendants' sale, offering for sale, and distribution or advertising of non-conforming goods under the 7-Eleven Marks causes dilution of the distinctive quality of the 7-Eleven Marks, in violation of 15 U.S.C. § 1125(c).

108.     As a direct and proximate result of Defendants' infringement, 7-Eleven has been and is likely to be substantially injured in its business, including its goodwill and reputation, resulting in lost revenues and profits, and diminished goodwill.

109.    7-Eleven has no adequate remedy at law because the 7-Eleven Marks are unique and represent to the public 7-Eleven's identity, reputation, and goodwill, such that damages alone cannot fully compensate 7-Eleven for Defendants' misconduct.

110.    Unless enjoined by the Court, Defendants will continue to use and infringe the 7-Eleven Marks, to 7-Eleven's irreparable injury.  This threat of future injury to 7-Eleven's business identity, goodwill, and reputation requires injunctive relief to prevent Defendants' continued dilution of the 7-Eleven Marks and to ameliorate and mitigate 7-Eleven's injuries.

## COUNT VII

### Lanham Act - Unfair Competition
**(Against all Defendants)**

111.    7-Eleven repeats and realleges ¶¶ 1 through 78 of its Complaint as and for this paragraph 111, as if fully set forth herein.

112.    Defendants' acts, practices and conduct constitute unfair competition, false designation of origin and false or misleading descriptions or representations of fact, in that they are likely to cause confusion or to cause mistake, to deceive others as to the affiliation, connection, or association of the parties and/or to misrepresent the nature, characteristics, qualities, or geographic origin of the parties' goods, services and commercial activities, all in violation of 15 U.S.C. § 1125(a).

113.    As a direct and proximate result of Defendants' unfair competition, 7-Eleven has been and is likely to be substantially injured in its business, including its goodwill and reputation, resulting in lost revenues and profits and diminished goodwill.

114.    7-Eleven has no adequate remedy at law because the 7-Eleven Marks are unique and represent to the public 7-Eleven's identity, reputation and goodwill, such that damages alone cannot fully compensate 7-Eleven for Defendants' misconduct.

115.    Unless enjoined by the Court, Defendants will continue to use and infringe the 7-Eleven Marks, to 7-Eleven's irreparable injury.  This threat of future injury to 7-Eleven's business identity, goodwill and reputation requires injunctive relief to prevent Defendants' continued use of the 7-Eleven Marks and to ameliorate and mitigate 7-Eleven's injuries.

## PRAYER FOR RELIEF

**WHEREFORE**, 7-Eleven respectfully prays for the following relief against Defendants:

(A)    A preliminary and permanent injunction directing that Defendants surrender possession of and be ejected from the premises and facilities at:

1.    800 West Fullerton Street, Addison, Illinois;

2.    6 East 47th Street, La Grange, Illinois;

3.    950 N. Rohlwing Road, Itasca, Illinois;

4.    1530 N. Roselle Road, Schaumburg, Illinois;

5.    1091 S. Weber Road, Bolingbrook, Illinois;

6.    26850 East Oasis Service Road, Lake Forest, Illinois; and

7.    13845 West Oasis Service Road, Lake Forest Illinois.

(B)    A preliminary and permanent injunction: (i) directing Defendants to surrender possession of the inventory and proceeds of all of the Stores other than the Niles Store, which are subject to 7-Eleven's security interests; and (ii) enjoining Defendants from removing any furniture, fixtures, signs, equipment or other property or leasehold improvements from the premises of each Store other than the Niles Store;

(C)    A preliminary and permanent injunction enjoining Defendants, their agents, servants and employees and those people in active concert or participation with them, from:

1. Using the 7-Eleven Marks or any trademark, service mark, logo or trade name that is confusingly similar to the 7-Eleven Marks;

2. Otherwise infringing the 7-Eleven Marks or using any similar designation, alone or in combination with any other components;

3. Passing off any of their products or services as those of 7-Eleven or 7-Eleven's authorized franchisees;

4. Causing a likelihood of confusion or misunderstanding as to the source or sponsorship of their businesses, products or services;

5. Causing a likelihood of confusion or misunderstanding as to their affiliation, connection or association with 7-Eleven and its franchisees or any of 7-Eleven's products or services; and

6. Unfairly competing with 7-Eleven or its franchisees, in any manner;

(D)     A preliminary and permanent injunction directing Shakti BCP to: (i) alter the trade dress of the Niles Store to distinguish it from an authorized 7-Eleven Store; and (ii) remove all 7-Eleven signage at the Store, both interior and exterior;

(E)     An order pursuant to 15 U.S.C. § 1118 that all labels, signs, prints, packages, receptacles, logo items, and advertisements, bearing the 7-Eleven Marks, in the possession of Defendants, their agents, servants and employees, and those people in active concert or participation with them, be delivered to 7-Eleven at Defendants' cost;

(F)     That Defendants be ordered to account for and pay over to 7-Eleven all gains, profits and advantages derived by them as a result of their infringement of the 7-Eleven Marks and unfair competition to the full extent provided for by Section 35 of the Lanham Act, 15 U.S.C. § 1117, and by the controlling principles of common law;

(G)     That judgment be entered in favor of 7-Eleven and against Defendants for such damages as 7-Eleven has sustained by reason of Defendants' trademark infringement and unfair competition; and that, because of the willful nature of said infringement, the Court enter

judgment for 7-Eleven for three times the amount of said damages, pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117;

(H)    That Defendants be required to file with the Court and serve upon 7-Eleven's counsel within ten (10) days after entry of any injunction or order issued herein, a written report, under oath, setting forth in detail the manner in which they have complied with such injunction or order;

(I)    That judgment be entered in favor of 7-Eleven and against Defendants for such damages as 7-Eleven has sustained by reason of Defendants' breaches of the Franchise Agreements;

(J)    On the Fourth Count of the Complaint, judgment against Shakti BCP and in favor of 7-Eleven in the amount of $200,000.00;

(K)    That judgment be entered in favor of 7-Eleven and against Defendants for the costs and expenses, including reasonable attorneys' fees, incurred by 7-Eleven in connection with this action as provided for by statute; and

(L)    Such other relief this Court deems just and proper.

**7-ELEVEN, INC.**

By:  /s/ Norman M. Leon
       One of its attorneys

Norman M. Leon
John A. Hughes
DLA PIPER LLP (US)
444 West Lake Street, Suite 900
Chicago, IL 60606
(312) 368-4000

Dated: August 1, 2018